UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

UNITED STATES OF AMERICA                                                                 PLAINTIFF

v.                                                                  CASE NO. 5:18-CR-00081-JMH-MAS

BOGDAN-STEFAN POPESCU                                                                   DEFENDANT

**DEFENDANT'S MOTION FOR IMMEDIATE
RELEASE DUE TO DANGER FROM CORONAVIRUS**

Comes the defendant, Bogdan-Stefan Popescu (hereinafter "Popescu"), through counsel, and moves this Honorable Court, to order his immediate release to home detention due to the substantial risk to himself and the community from the Coronavirus. In support of this Motion, Popescu states the following:

The Bail Reform Act provides for the "temporary release" of a person in pretrial custody "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The health risk to Popescu and the community is heightened in this pandemic situation given the conditions in the local jails, where it is impossible to practice safe distancing and proper hygiene. This necessitates temporary release on bail until this pandemic has ended.

**Factual Background**

*Changed Circumstances: COVID-19 Outbreak*

As of March 12, 2020, the new strain of coronavirus which causes COVID-19, has infected over 132,300 people, leading to at least 4,954 deaths worldwide.[1] On March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic.[2] Governor Beshear declared a State of Emergency on March 6, 2020. Additional protective measures have been taken including school closings, bar and restaurant closings, gatherings limited to no more than ten persons, and social distancing of at least six feet. As of March 17, 2020, there are twenty-six positive cases of COVID-19 Kentucky.

The CDC has issued guidance that individuals at higher risk of contracting COVID-19 — adults over 60 years old and people with chronic medical conditions [such as lung disease, heart disease, and diabetes]—take immediate preventative actions, including avoiding crowded areas and staying home as much as possible.[3] With confirmed cases in Kentucky that indicate community spread, we must take every necessary action to protect vulnerable populations and the community at large.

*Conditions of Confinement and Spread of Coronavirus*

Conditions of pretrial confinement create the ideal environment for the transmission of contagious disease.[4] Inmates cycle in and out of detention facilities from all over the world and the country, and people who work in the facilities including correctional officers, and care and

---

[1] *Coronavirus Map: Tracking the Spread of the Outbreak*, The New York Times (March 12, 2020), *at* https://nyti.ms/2U4kmud (updating regularly).
[2] *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (March 11, 2020) *at* https://bit.ly/2W8dwpS.
[3] *People at Risk for Serious Illness from COVID-19*, CDC (March 12, 2020) *at* https://bit.ly/2vgUt1P.
[4] Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, *at* https://doi.org/10.1086/521910.

2

service providers leave and return daily, without screening. Incarcerated people have poorer health than the general population, and even at the best of times, medical care is limited.[5] Many people who are incarcerated also have chronic conditions, like diabetes or HIV, which makes them vulnerable to severe forms of COVID-19. According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[6] Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[7] In China, officials have confirmed the coronavirus spreading at a rapid pace in Chinese prisons, counting 500 cases.[8] Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human decency."[9] Courts across Iran have granted 54,000 inmates furlough as part of the measures to

---

[5] Laura M. Maruschak et al. (2015). Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12. NCJ 248491. Washington, D.C.: U.S. Department of Justice, Bureau of Justice Statistics, *at* https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf

[6] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), *at* https://bit.ly/2W9V6oS.

[7] *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, The Verge (Mar. 7, 2020) *at* https://bit.ly/2TNcNZY.

[8] Rhea Mahbubani, *Chinese Jails Have Become Hotbeds of Coronavirus As More Than 500 Cases Have Erupted, Prompting the Ouster of Several Officials*, Business Insider (Feb. 21, 2020) *at* https://bit.ly/2vSzSRT.

[9] Jennifer Hansler and Kylie Atwood, *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak*, CNN (Mar. 10, 2020) *at* https://cnn.it/2W4OpV7.

contain coronavirus across the country.[10] In the U.S. steps are already being taken in some jurisdictions to facilitate the release of elderly and sick prisoners and to reduce jail populations by discouraging the refusing the admission of individuals arrested on non-violent misdemeanor charges.[11]

Local Detention Centers lack the resources necessary to engage in screening and testing of inmates, correctional staff, law enforcement officers and other care and service providers who enter the facility.

As additional people are arrested who have been out in the community as the coronavirus spreads, if they are not symptomatic, they will be brought into the Detention Center and held with the existing population, potentially bringing COVID-19 into this population held in large numbers, close quarters, and low sanitary conditions.

### The Bail Reform Act Requires Popescu's Release

A "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

---

[10] Claudia Lauer and Colleen Long, *US Prisons, Jails On Alert for Spread of Coronavirus*, The Associated Press (Mar. 7, 2020) *at* https://apnews.com/af98b0a38aaabedbcb059092db356697.

[11] In New York Brooklyn District Attorney Eric Gonzalez, joined by public health experts, has asked Governor Cuomo to grant emergency clemencies to elderly and sick prisoners (Sarah Lustbader, *Coronavirus: Sentenced to COVID-19*, The Daily Appeal (Mar. 12, 2020) *at* https://theappeal.org/sentenced-to-covid-19/.); Cuyahoga County (Ohio) is holding mass pleas and bail hearings to reduce the current jail population (https://www.cleveland.com/court-justice/2020/03/cuyahoga-county-officials-will-hold-mass-plea-hearings-to-reduce-jail-population-over-coronavirus-concerns.html); Mahoning County (Ohio) jail is refusing all non-violent misdemeanor arrestees (https://www.wkbn.com/news/coronavirus/mahoning-county-jail-refusing-some-inmates-due-to-coronavirus-outbreak/); see also Collin County (TX) (https://www.dallasnews.com/news/public-health/2020/03/12/facing-coronavirus-concerns-collin-county-sheriff-asks-police-not-to-bring-petty-criminals-to-jail/);

Liberty is the norm and "detention prior to trial or without trials is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). One charged with a crime is, after all, presumed innocent. *Stack v. Boyle*, 342 U.S. 1, 4 (1951). A single individual unnecessarily detained before trial is one individual too many, and the increasing use of the practice places tremendous wear on our constitutional system. *United States v. Montalvo-Murillo*, 495 U.S. 711, 723–24 (1990) (Stevens, J., dissenting, joined by Brennan and Marshall, JJ.). Due to the crucial interests involved, it follows that a "case-by-case" approach is required at any stage of the case in assessing the propriety of pretrial detention. *See United States v. Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir. 1986) (discussing due process analysis for evaluating propriety of prolonged pretrial detention, and the interests at stake) (citations omitted), *cert. dismissed sub nom.*, *Melendez-Carrion v. United States*, 479 U.S. 978 (1986).

The courts have long recognized that there is no greater necessity than keeping a defendant alive, no matter the charge. As Judge Weinstein held, "We do not punish those who have not been proven guilty. When we do punish, we do not act cruelly. Continued incarceration of this terminally ill defendant threatens both of these fundamental characteristics of our democracy." *United States v. Scarpa*, 815 F.Supp.88 (E.D.N.Y. 1993) (pretrial defendant with AIDS facing murder charges released on bail because of the "unacceptably high risk of infection and death on a daily basis inside the MCC").

This Court should consider the "total harm and benefits to prisoner and society" that continued pretrial imprisonment of Popescu will yield, relative to the heightened health risks posed to Popescu during this rapidly encroaching pandemic. *See Davis v. Ayala*, 135 S. Ct. 2187, 2209 (2015) (Kennedy, J., concurring) (calling for heightened judicial scrutiny of the projected impact of jail and prison conditions on a defendant); *United States v. Mateo*, 299 F.

5

Supp. 2d 201, 212 (S.D.N.Y. 2004) (reducing sentence where defendant's pretrial conditions were "qualitatively more severe in kind and degree than the prospect of such experiences reasonably foreseeable in the ordinary case").

### **Conditions of Release Are Available That Allow Popescu To Be Treated Humanely While Also Ameliorating Any Danger To The Community**

From Popescu's perspective, his life—not only his liberty—is on the line, creating a powerful incentive to abide by any release conditions the Court may impose and changing the calculus that initially led to the denial of bail in this case.

There is a lower risk of violating supervision during a global pandemic during which even leaving the house can endanger lives.

### **Conclusion**

Popescu is in a very vulnerable position by being held in custody with inadequate safety precautions during this pandemic, and his presence in the over-crowded jail system contributes to the risk for our entire community. For all of the above reasons, Popescu should be granted release on bond.

Respectfully Submitted,

/s/ Patrick J. Renn
Patrick J. Renn
600 West Main Street, Suite 100
Louisville, Kentucky 40202
(502) 540-5700
Counsel for Bogdan-Stefan Popescu

### **CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2020, the foregoing motion was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all attorneys of record.

s/ Patrick J. Renn