UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:18-CR-81-REW

UNITED STATES OF AMERICA                                    PLAINTIFF

V.                          PLEA AGREEMENT

BOGDAN-STEFAN POPESCU                                       DEFENDANT

* * * * *

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 1 of the Superseding Indictment, charging a violation of 18 U.S.C. § 1962(d), Conspiracy to Commit a RICO Offense. Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss the remaining counts as against the Defendant.

2. The essential elements of 18 U.S.C. § 1962(d) are:

   (a) That the defendant knowingly agreed to conduct or participate, directly or indirectly, in the affairs of the charged enterprise through a pattern of racketeering activity;

   (b) That the enterprise was established;

   (c) That the enterprise engaged in, or its activities affected, interstate or foreign commerce; and

   (d) That the defendant was employed by, or associated with, the enterprise.

3. As to Count 1, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

    a) The Defendant is a Romanian national from Alexandria, Romania. He operated using the online moniker, treaba2013, and used the aliases, Boby, Bobi, Bau Bau, and Marian Ionescu. During the period relevant to the Superseding Indictment, the Defendant managed a car wash in Bucharest, Romania, where he managed coconspirators Florin Arvat, Alin-Ionut Dobrica, and G.D., among others. He associated with the Alexandria Online Auction Fraud ("AOAF") Network, an enterprise as defined by 18 U.S.C. § 1961(4).

    b) Members of the AOAF Network used the Internet to post advertisements for goods to auction websites, including eBay, and online sales websites. The AOAF Network members emailed invoices to potential buyers that contained eBay and other entity trademarks and encouraged the victims to reach out to customer support if they had any questions. AOAF Network members then often posed as customer support representatives for eBay, or false entities that sounded as if they were affiliated with eBay, in telephone calls and email communications.

    c) Once the AOAF Network members convinced victims to purchase and provide payment for a falsely advertised item, AOAF Network members reached out to the Confidential Source ("CS"), operating out of the Eastern District of Kentucky, and others in the United States who provided money laundering services similar to the CS, to convert the victim payment to bitcoin. The AOAF Network members would send victim payments to the CS. The CS would then launder the proceeds of the fraud by exchanging fraud proceeds into bitcoin. Then, the CS, located in the United States, sent many members of the AOAF Network, located in Romania, the bitcoin exchanged for fraud proceeds to bitcoin addresses belonging to the respective AOAF Network members.

    d) From at least December of 2013, the Defendant ran an operation whereby he knowingly negotiated fraudulently obtained bitcoin. He indirectly received some of this bitcoin from the CS and elsewhere, on behalf of the other AOAF Network members. He did this in many ways. Oftentimes, he would receive cryptocurrency from coconspirators who had obtained the funds through online fraud scams, transfer the cryptocurrency to other co-conspirators,

2

including Vlad-Calin Nistor, direct that Nistor exchange the cryptocurrency for fiat currency, and then deposit the fiat currency into bank accounts held in the names of various employees and family members, including Arvat, Dobrica, G.D., M.C., and I.P. He directed Arvat and Dobrica to withdraw the funds from the bank accounts and deliver the cash back to him. If he transferred cryptocurrency to Rossen Iossifov, who only exchanged bitcoin for cash, he directed employees to drive to Bulgaria to retrieve the cash from Iossifov. The Defendant then dispersed payments back to the original fraudster, keeping a cut for himself, some of which he paid to his employees, like Arvat, Dobrica, and G.D.

e) The Defendant engaged in this scheme from at least December 2013 until the time of the Indictment. This scheme concealed the source, nature, ownership and control of the fraud proceeds. The Defendant knew of the scheme's unlawful purposes and voluntarily joined it.

f) The Defendant also coordinated the dissemination of tools used to defraud American-based victims to members of the AOAF Network enterprise. He also provided language and photographs for fake advertisements, language for email communications with victims, and usernames and passwords for IP anonymizing services,

g) The Defendant also assisted coconspirators with obtaining services needed to complete their fraudulent conduct. For example, when a coconspirator had a victim who wanted to talk with what they believed to be an eBay customer support representative, he would link the said coconspirator up with another coconspirator who offered call center services – that is, who would impersonate an eBay customer service representative over the phone. The Defendant would forward the fake invoices from the fraudster coconspirator to the call center coconspirator, so the call center coconspirator knew the details of the fake advertisement when talking to the victim.

h) The Defendant provided money-laundering to the following coconspirators: Beniamin-Filip Ologeanu, Andrei-Catalin Stoica, and others.

4. The statutory punishment for Count 1 is imprisonment for not more than 20 years, a fine of $250,000 or twice the gross gain or loss, and a term of supervised release of not more than 3 years. A mandatory special assessment of $100 applies, and the

3

Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

5. Pursuant to Rule 11(c)(1)(B), the United States recommends the following sentencing guidelines calculations, and it may object to or argue in favor of other calculations. This recommendation does not bind the Court.

> (a) The United States Sentencing Guidelines (U.S.S.G.), November 1, 2018, manual will determine the Defendant's guidelines range.
>
> (b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes all wire fraud and money laundering transactions.
>
> (c) Pursuant to U.S.S.G. § 2S1.1(a)(1), 2B1.1(a)(1), the base offense level is 7.
>
> (d) Pursuant to U.S.S.G. § 2B1.1(b)(1), increase the offense level by 18 points, because the loss amount is greater than $3,500,000 and less than $9,500,000.
>
> (e) Pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i), increase the offense level by 2 levels for an offense involving 10 or more victims.
>
> (f) Pursuant to U.S.S.G. § 2B1.1(b)(10)(B), increase the offense level by 2 levels for a substantial portion of the fraudulent scheme being committed from outside the United States.
>
> (g) Pursuant to U.S.S.G. § 2S1.1(b)(2)(B), increase the offense level by 2 levels for a conviction under 18 U.S.C. § 1956.
>
> (h) Pursuant to U.S.S.G. § 2S1.1(b)(3), increase the offense level by 2 levels for the offense involving sophisticated laundering.
>
> (i) Pursuant to U.S.S.G. § 3B1.1(a), increase the offense calculation by 4 levels, because the Defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive.
>
> (j) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level

4

by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

(k) Pursuant to U.S.S.G. § 5E1.1, restitution will be determined at sentencing.

The Defendant does not agree with the United States' guidelines calculations.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant waives the right to appeal the guilty plea and conviction. Except for claims of ineffective assistance of counsel or prosecutorial misconduct, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

8. The Defendant understands that if he is not a United States citizen, pleading guilty may have consequences with respect to his immigration status. Under federal law, a broad range of crimes are removable offenses. Indeed, when a defendant pleads guilty to certain crimes, removal is presumptively mandatory or even automatic. Removal and other immigration consequences, such as denial of citizenship or denial of admission to the United States, are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect his conviction may have on his immigration status. The Defendant has discussed the immigration consequences of this guilty plea with his defense attorney and acknowledges that this guilty plea may result in his automatic removal from the United States.

5

9. The Defendant will forfeit to the United States all interest in the following:

- €24,500 Euro, seized by Romanian authorities on December 11, 2018;
- $5,000 USD, seized by Romanian authorities on December 11, 2018;
- Residence located at Bibescu Street, Cadastral Number 56554, Mogosoaia Village, Ilfov County, Romania; and
- Residence located at Moraresti Village, Arges County, Romania.

The Defendant acknowledges that he has an ownership interest in the aforementioned items and will execute any documents necessary for this forfeiture.

10. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. The Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant fails

to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

11. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

12. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

13. This document and the sealed supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky, the

7

Computer Crime and Intellectual Property Section, and the Defendant. The United States has not made any other promises to the Defendant.

14. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

15. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

ROBERT M. DUNCAN, JR.
UNITED STATES ATTORNEY

Date: 6/11/2020   By: Kathryn M. Anderson
Assistant United States Attorney

Date: 6/11/2020   Timothy C. Flowers
Senior Trial Attorney

Date: 06-08-2020   Bogdan-Stefan Popescu
Defendant

Date: 6/8/20   J. Rob Eggert
Attorney for Defendant

Date: 6/8/2020   Patrick Renn
Attorney for Defendant

8